**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

        **Plaintiff,**
        v.                                                                                  **10-CR-233S**

**JOSE MARTINEZ a/k/a "Noelle,"**

        **Defendant.**
_____

## DECISION AND ORDER

The government has filed a motion wherein it seeks an "order directing the defendant Jose Martinez to provide DNA and hair samples to Special Agents of the Drug Enforcement Administration and DEA Task Force, or other law enforcement officers."  (Docket #42).  More specifically, the government seeks to obtain "Buccal swabs from the cheek of the defendant" and "at least 25 hair samples, including the roots, from various locations on the defendant's head."  (Docket #42, ¶s 6, 7).  The purpose for these samples is one of comparison to "hair follicles which were found inside [a router] box submitted to the New York State Police Forensic Laboratory in June 2008."  (Docket #42, ¶ 3).

The defendant has filed his opposition to the government's motion, and oral argument on the issue has been heard by this Court.

The Court is at a loss as to why the government needs both a buccal swab from the cheek of the defendant and "at least 25 hair samples, including the roots, from various locations on the defendant's head" since a person's DNA is the same in every cell of that person's body and remains the same throughout that person's life.

The plucking of "25 hair samples, including the roots" is in my opinion a painful and unnecessary intrusive procedure since the obtaining of a buccal swab will provide the same DNA information being sought by the government. The taking of a buccal swab is a very quick and painless procedure of a much less intrusive nature.

It is also pointed out that the forensic report from the New York State Police Forensic Center (Document 58-1, page 7 attached to Docket #58) indicates that the five human hairs allegedly found "in a Trendnet 1000 mbps gigabit Switch Box" and submitted for forensic examination do not contain roots. Therefore, I question the need to have "hair samples, including roots" for purposes of making a forensic comparison.

In addressing the issue of taking bodily physical evidence, the United States Supreme Court has stated:

> [T]he permissibility of a particular practice "is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Delaware v. Prouse*, 440 U.S. at 654, 99 S.Ct. at 1396; *United States v. Martinez-Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976).

> In most criminal cases, we strike this balance in favor of the procedures described by the Warrant Clause of the Fourth Amendment.  *See United States v. Place, supra*, 462 U.S. at 701, and n. 2, 103 S.Ct. at 2641 and n. 2; *United States v. United States District Court*, 407 U.S. 297, 315, 92 S.Ct. 2125, 2135-2136, 32 L.Ed.2d 752 (1972).

*Skinner v. Railway Labor Executive's Association*, 489 U.S. 602, 619 (1989).

It is obvious that the immediate objective of the government in seeking a buccal swab from the defendant is to generate evidence for use in its criminal prosecution of the defendant.  Such sample taking constitutes a search within the meaning of the Fourth Amendment.  "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." *Schmerber v. California*, 384 U.S. 757, 767 (1966); *United States v. Nicolosi*, 885 F. Supp. 50, 52 (E.D.N.Y. 1995).

I find that the taking of a buccal swab from the inside of the defendant's mouth is properly viewed as implicating his dignity interests.  Because the sample taken "can provide a significant amount of genetic identity information, a personal privacy interest of the defendant also exists.  As a result, compliance with the Fourth Amendment is mandated; namely, there must be a finding of probable cause to warrant the taking of such sample.  *United States v Nicolosi, supra* at 55.

The government has put forth a sufficient basis to warrant a finding that probable cause does exist for the ordering of the taking of the buccal sample from the

defendant.  A confidential informant advised detectives of the Ellicott Police Department on June 3, 2008 that the defendant "had brought [the Trendnet 1000 mgps gigabit Switch Box] over to [his residence]."  The detectives took the switch box and an "orange Baccardi canvass cooler bag" which had also been brought by the defendant to the informant's residence.  Forensic examinations of the canvass bag established the "presence of cocaine." (Document 58-1, page 2 attached to Docket #58).  As stated earlier, the switch box contained five (5) human hairs.  (Document 58-1, page 7 attached to Docket #58).

The disclosure by the confidential informant that the defendant allegedly brought the switch box which "contained several empty plastic baggies" and canvass bag which contained the "presence of cocaine" (Document 58-1, pages 2, 3, 4, 5, 7 attached to Docket #58) constitutes sufficient probable cause to connect the defendant with the switch box and the canvass bag and the commission of violations of Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 841(b)(1)(B).  Such probable cause connection is sufficient to warrant the taking of a buccal sample from the defendant for purposes of doing a DNA analysis and comparison with the hair samples found in the switch box.  Therefore, it is hereby ORDERED that the defendant submit to the taking of such buccal sample by agents of the Federal Drug Enforcement Administration.  It is further hereby

**ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Decision and Order be filed with the Clerk of Court.

**ANY OBJECTIONS** to this Decision and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Decision and Order in accordance with the above statute, Fed. R. Crim. P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).  **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of**

**Rule 58.2 (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Judge's refusal to consider the objection.**


DATED:    Buffalo, New York
               March 23, 2011

*S/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**