UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

JOSE MARTINEZ a/k/a "Noelle,"

Defendant.

**DECISION AND ORDER**
10-CR-233S (1)

## I. INTRODUCTION

On July 11, 2014, a jury convicted Jose Martinez of conspiring, in violation of 21 U.S.C. § 846, to possess with intent to distribute, and to distribute, 500 grams or more of cocaine and 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B). Martinez now moves for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure or, alternatively, for a new trial under Rule 33. For the reasons discussed below, Martinez's motion is denied.

## II. BACKGROUND

On August 12, 2010, a federal grand jury returned a six-count indictment against Martinez and four co-defendants.[1] (Docket No. 1.) Only Count 1 is relevant here. It charged Martinez alone with conspiring to possess with intent to distribute, and to distribute, 500 grams or more of cocaine and 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 846. (Docket No. 1.)

After vigorous pretrial proceedings, Martinez and three of his co-defendants went

---

[1] One co-defendant pled guilty before trial. (Docket No. 157.)

1

to trial on a six-count redacted indictment[2] (Docket No. 529), beginning on May 12, 2014 (Docket No. 457). Relating to Count 1, the government presented evidence of the drug conspiracy involving Martinez and Quincy Turner (and others), most of which came by way of information learned through two proffer sessions that law enforcement conducted with Turner after his arrest.

Sergeant Investigator James Rensel and Lieutenant John W. Runkle, both of the Chautauqua County Sheriff's Department, interviewed Turner in April and May 2008. (Docket No. 553 at 4, 12, 91; Docket No. 554 at 4, 16; Docket No. 558 at 5, 83, 86.) Over the course of those two sessions, Turner told Rensel and Runkle that he (Turner) received kilogram quantities of cocaine from Martinez (also known as "Rico Suave" or "Noelle"), and then sold the cocaine to an individual named Quentin Leeper, who then sold the cocaine to others such as Koran Leeper, Millicent Leeper, and Ray Hodnett, for further distribution. (Docket No. 553 at 15, 17, 20, 46; Docket No. 554 at 32–34, 36–38, 101; Docket No. 557 at 123–128, 172, 179, 181, 182; Docket No. 558 at 51, 52, 86, 141, 148; Docket No. 559 at 12, 37.) Although Turner most often purchased cocaine outright from Martinez, and Quentin Leeper most often purchased cocaine outright from Turner, there were occasions when Martinez would "front" cocaine to Turner and Turner would "front" cocaine to Quentin Leeper. (Docket No. 555 at 32; Docket No. 556 at 36, 40; Docket No. 557 at 137, 138.) There were also occasions when Quentin Leeper would further "front" drugs to his customers, including Koran Leeper. (Docket No. 557 at 126.) "Front" is a term used to

---

[2]This was a death-eligible case. Because the Attorney General elected not to pursue the death penalty against any of the defendants (Docket Nos. 125, 278, 279, 280), the indictment was redacted to eliminate the Notice of Special Findings sections. See 18 U.S.C. §§ 3591, 3592.

2

describe providing drugs on consignment. (Docket No. 557 at 184.)

Among other drug transactions, between late 2007 and April 2008, Turner sold Quentin Leeper three kilograms of cocaine, each of which Turner got from Martinez, either through outright purchase or by fronting. (Docket No. 553 at 15, 17, 19, 20, 24; Docket No. 554 at 32, 36, 101, 129; Docket No. 558 at 75.) On one occasion, Turner pooled money with Quentin Leeper to purchase a kilogram of cocaine from Martinez. (Docket No. 558 at 75.)

Quentin Leeper largely confirmed the testimony from Rensel and Runkle. Quentin Leeper testified that he and Quincy Turner grew up together and were very close. (Docket No. 555 at 10; Docket No. 556 at 28.) At one time, Quentin Leeper had a source of cocaine in Los Angeles, California, known as "Cool." (Docket No. 555 at 21-30; Docket No. 556 at 35.) When "Cool" could no longer supply Quentin Leeper, Quincy Turner found him a new source. (Docket No. 555 at 31; Docket No. 556 at 40; Docket No. 557 at 129.) Once Turner found the new source, which turned out to be Martinez, Turner became Quentin Leeper's source of supply. (Docket No. 555 at 31, 32.) Turner told Quentin Leeper that his (Turner's) source was Martinez, referring to Martinez by his nickname "Rico Suave." (Docket No. 555 at 93, 94; Docket No. 556 at 74; Docket No. 558 at 148; Docket No. 559 at 37.) Quentin Leeper told his cousin, Koran Leeper, that his (Quentin Leeper's) source was Turner. (Docket No. 557 at 133.) Koran Leeper and others also knew that Turner's source was Martinez, though Koran Leeper knew Martinez as "Rico Suave," "O Boy," or "Noelle." (Docket No. 557 at 136, 189, 190, 196, 197.) Each nickname was associated with Martinez. (Docket No. 557 at 148, 149, 189; Docket No. 558 at 38; Docket No. 559 at 58.)

3

Brian Wilson, one of Quincy Turner's friends, also testified about Martinez serving as the source for Turner and Quentin Leeper. (Docket No. 557 at 5.) Wilson testified that he was present in March 2008 when Turner purchased cocaine from Martinez in the parking lot of a grocery store, which was consistent with Turner telling Rensel and Runkle that he and Martinez often met in parking lots to complete their drug transactions. (Docket No. 553 at 24; Docket No. 554 at 70; Docket No. 557 at 5–8, 73, 84.) Turner, Wilson, and Martinez met in the parking lot, at which time Turner retrieved a shoe box full of money from his car and drove away with Martinez, leaving Wilson behind. (Docket No. 557 at 9-11, 85, 86, 112, 113.) When Turner came back, he had two packages of what Wilson recognized to be cocaine. (Docket No. 557 at 11-14, 87, 88, 96, 98.) The timing of this transaction corresponds to Quentin Leeper's testimony that Turner sold him a kilogram of cocaine in March 2008 for $30,000. (Docket No. 555, at 38, 39, 45, 46; Docket No. 559 at 33.) Koran Leeper, Quentin Leeper's cousin, corroborated this testimony, testifying that Quentin Leeper purchased a kilogram of cocaine from Turner in March 2008. (Docket No. 557 at 227.) According to Wilson, Turner told him that everyone in Jamestown, N.Y., got their drugs from Martinez. (Docket No. 557 at 15, 99, 110, 111.)

The nine-week trial concluded on July 11, 2014. (Docket No. 526.) Upon the close of the government's proof, this Court denied Martinez's Rule 29 motion. (Docket Nos. 517, 518.) The jury subsequently found Martinez guilty of Count 1 and acquitted him and his co-defendants of Counts 2-6. (Docket No. 530.)

Following the verdict, Martinez timely filed the instant motion for judgment of acquittal or, alternatively, for a new trial, on July 25, 2014. (Docket No. 545.) Martinez seeks judgment of acquittal or a new trial based on insufficiency of the evidence and

4

erroneous jury instructions.³

### III.  DISCUSSION

**A.     Martinez's Rule 29 Motion**

   **1.     Rule 29 of the Federal Rules of Criminal Procedure**

Under Rule 29 (a), a court must, upon a defendant's motion, "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." A defendant may move for a judgment of acquittal after the government closes its evidence, after the close of all evidence, or after the jury has returned its verdict and been discharged.  See Rule 29 (a) and (c)(1).  A defendant may also renew a previously denied Rule 29 motion, so long as renewal occurs within 14 days after the guilty verdict or discharge of the jury, whichever is later.  See Rule 29 (c)(1).

The making of a motion for a judgment of acquittal before the court submits the case to the jury is not a prerequisite for making such a motion after the jury is discharged.  See Rule 29 (c)(3).  "[W]hen a motion for judgment of acquittal made at the close of the government's case-in-chief is denied and a defendant presents a case, then the evidence put in by the defense will also be considered in deciding a [Rule 29] motion made after the trial ends."  United States v. Truman, 762 F. Supp. 2d 437, 445 (N.D.N.Y. 2011).

A defendant challenging the sufficiency of the evidence bears a heavy burden. United States v. Hassan, 578 F.3d 108, 126 (2d Cir. 2008); United States v. Finley, 245 F.3d 199, 202 (2d Cir. 2001).  "In evaluating whether the evidence was sufficient to convict

---

³Martinez's motion also includes passing references to two other possible arguments involving the Fifth Amendment and the admission of hearsay testimony, but neither argument is developed or supported by authority.  (Docket No. 545, ¶¶ 75, 293(8).)

a defendant, [a reviewing court] consider[s] all of the evidence, both direct and circumstantial, 'in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government.'" United States v. Velasquez, 271 F.3d 364, 370 (2d Cir. 2001) (quoting United States v. Walker, 191 F.3d 326, 333 (2d Cir. 1999)).

When considering the trial evidence, "the court must be careful to avoid usurping the role of the jury." United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003). The court may not "substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury." United States v. Guadagna, 183 F.3d 122, 130 (2d Cir. 1999) (internal quotation marks and citations omitted). Determining the witnesses' credibility falls strictly within the province of the jury. Guadagna, 183 F.3d at 129 (noting that the court must defer to the jury even if the evidence would also support, in the court's opinion, a different result).

A judgment of acquittal is warranted only if the court concludes that the evidence is non-existent or so meager that no rational trier of fact could find the defendant guilty beyond a reasonable doubt. Velasquez, 271 F.3d at 270; Guadagna, 183 F.3d at 130. The court must consider the evidence "in its totality, not in isolation, and the government need not negate every possible theory of innocence." United States v. Cote, 544 F.3d 88, 98 (2d Cir. 2008); see Guadagna, 183 F.3d at 130 ("each fact may gain color from the others").

### 2. Proof of the Conspiracy

In Count 1 of the indictment, the grand jury charged as follows:

> Beginning sometime prior to or on or about January 1, 2007,

and continuing to in or about June 2008, the exact dates being unknown, in the Western District of New York, and elsewhere, the defendant **JOSE MARTINEZ a/k/a Noelle**, did knowingly, willfully and unlawfully combine, conspire and agree with others, known and unknown, to commit the following offenses, that is, to possess with intent to distribute, and to distribute, 500 grams or more of a mixture and substance containing cocaine, and to manufacture, possess with intent to distribute, and to distribute, 50 grams or more of a mixture and substance containing cocaine base, both Schedule II controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 841(b)(1)(B).

**All in violation of Title 21, United States Code, Section 846.**

(Docket No. 1 (emphasis in original).)

To convict Martinez of Count 1, the government had to prove beyond a reasonable doubt that (1) there existed an agreement between two or more persons to possess with intent to distribute and to distribute cocaine or cocaine base, and (2) Martinez knowingly became a member of the conspiracy with the "specific intent to commit the offenses that were the object of the conspiracy." See United States v. Monaco, 194 F.3d 381, 386 (2d Cir. 1999); see also United States v. Aleskerova, 300 F.3d 286, 292 (2d Cir. 2002). Mere association with those implicated in an unlawful undertaking, of course, is insufficient to prove knowing involvement. United States v. Nusraty, 867 F.2d 759, 764 (2d Cir. 1989). "Evidence tending to show knowing participation in the conspiracy is needed, i.e., facts sufficient to draw a logical and convincing connection between circumstantial evidence of an agreement, and the inference that an agreement was in fact made." United States v. Jones, 393 F.3d 107, 111 (2d Cir. 2004). The government, however, need not prove that a defendant knew all of the conspirators or knew all the details of the conspiratorial scheme. See United States v. Downing, 297 F.3d 52, 57 (2d Cir. 2002). The government

7

may rely on circumstantial evidence to prove a defendant's participation in the conspiracy. See United States v. Wexler, 522 F.3d 194, 208 (2d Cir. 2008).

Viewed in the light most favorable to the government, the evidence at trial sufficiently established the existence of a drug conspiracy. As set forth above, Martinez supplied Turner, who supplied Quentin Leeper, who supplied others, including Koran Leeper, Millicent Leeper, and Ray Hodnett. Evidence of the kilogram quantities of cocaine, Martinez "fronting" cocaine to Turner, and Turner and Quentin Leeper pooling money to purchase cocaine from Martinez, among other evidence, was sufficient for the jury to conclude that Martinez knew that the cocaine he provided to Turner would be further distributed and was not simply for personal use. Turner's proffer to law enforcement, in which he detailed the drug conspiracy, was corroborated by Quentin Leeper, Koran Leeper, and Brian Wilson, who himself was an eyewitness to a large-scale drug transaction between Martinez and Turner. Thus, there was sufficient evidence from which the jury could find the existence of a drug conspiracy in which Martinez was an active and knowing member.

And Martinez does not contend differently. He concedes in his motion that "[Quincy] Turner . . . was a middleman between the Leeper Conspiracy and Martinez;" that "Turner was the 'plug'[4] for the Leeper Conspiracy;" and that "Martinez was Turner's 'plug.'" (Docket No. 545, ¶¶ 293(3)–(5).) Martinez nonetheless argues that the evidence is insufficient because (1) Count 1 charges what Martinez terms "the Leeper conspiracy," not a conspiracy involving Martinez and Turner, and (2) Martinez and Turner had only a non-

---

[4]"Plug" is a shorthand term for a source of supply. (Docket No. 555 at 31.)

conspiratorial, buyer-seller relationship. This Court previously rejected both arguments and does so again here.

First, Martinez's insistence that Count 1 charges "the Leeper conspiracy" is a nonstarter, because Count 1 of the indictment has never been defined as charging "the Leeper conspiracy," as Martinez understands it. Although this Court recognizes that Martinez was added to and then severed from an earlier-filed case involving Quentin Leeper and his drug organization, Count 1 of the indictment has simply never been cabined in the manner Martinez suggests.

Nonetheless, this Court permitted Martinez to present his Count 1 "Leeper conspiracy" theory to the jury and argue that the government either failed to prove the existence of the conspiracy charged in Count 1 or, alternatively, that multiple conspiracies existed, with acceptance of either argument precluding a finding of guilt. This Court further included a multiple-conspiracies instruction to the jury at Martinez's request. See 1 L. Sand et al., Modern Federal Jury Instructions – Criminal, ¶ 19.01, at Instruction 19–5.

By its verdict, however, the jury rejected Martinez's argument, and rather, found that the government fulfilled its burden of proof as to Count 1. Based on the evidence presented at trial, only a portion of which is set forth above, this Court finds that the jury's verdict is supported by sufficient evidence. And because Count 1 was never defined or identified by the government as "the Leeper conspiracy," it was not error for this Court to deny Martinez's request to instruct the jury that Count 1 charged "the Leeper conspiracy," as Martinez hoped to define it.

Martinez's second argument—that he and Turner had only a buyer-seller relationship—is similarly unpersuasive in light of the evidence presented at trial. To be

9

sure, "the mere purchase and sale of drugs does not, without more, amount to a conspiracy to distribute narcotics." See United States v. Brock, 789 F.3d 60, 63 (2d Cir. 2015) (citing United States v. Parker, 554 F.3d 230, 234 (2d Cir. 2009)). "The rationale for holding a buyer and a seller not to be conspirators is that in the typical buy-sell scenario, which involves a casual sale of small quantities of drugs, there is no evidence that the parties were aware of, or agreed to participate in, a larger conspiracy." United States v. Medina, 944 F.2d 60, 65 (2d Cir. 1991).

To determine whether the relationship between a given buyer and seller constitutes a broader agreement to participate in a drug conspiracy, the Second Circuit requires examination of the following factors: (1) whether there was prolonged cooperation between the parties; (2) whether there was a level of mutual trust; (3) whether there were standardized dealings; (4) whether there were sales on credit; and (5) the quantity of the drugs involved. See Brock, 789 F.3d at 64 (quoting United States v. Hawkins, 547 F.3d 66, 74 (2d Cir. 2008)).

Here, the evidence at trial established that there existed a relationship between Martinez and Turner of at least six months. (Docket No. 553 at 15, 17, 20, 46; Docket No. 554 at 32, 36–38, 101.) The relationship began when Turner became dissatisfied with his former source of supply, Eddie Melendez, who is Martinez's brother. (Docket No. 553 at 26, 28, 32; Docket No. 554 at 21, 23, 35, 47–49, 83.) Martinez stepped in and offered to sell Turner higher quality cocaine at a lower price. (Docket No. 553 at 26, 28; Docket No. 554 at 21, 23, 35, 47–49, 83.) Turner accepted Martinez's offer, after which Martinez became Turner's exclusive source of supply. Martinez thereafter supplied Turner with cocaine—at least three kilograms in six months—even transacting business in front of

10

Brian Wilson, which demonstrated a certain level of mutual trust. Martinez also "fronted" Turner cocaine and sold him drugs in large-scale quantities.

In this Court's view, this evidence demonstrates a shared conspiratorial purpose between Martinez and Turner. Martinez knew that Turner trafficked cocaine and knew that Turner needed a new source of supply once Turner became disenchanted with Melendez. Martinez also knew that the cocaine he supplied Turner would be further distributed, because he knew of Turner's previous dealings with Melendez and at times fronted Turner cocaine, which implicitly demonstrates Martinez's awareness that Turner would sell the cocaine in order to pay him out of the profits. From the evidence, the jury could reasonably find that Martinez and Turner had a cooperative, mutually beneficial arrangement that involved the sale and "fronting" of significant amounts of cocaine, which each man knew would be further distributed. This is significant indicia of conspiratorial purpose.[5] See Medina, 944 F.2d at 65-66 (noting that the rationale for the buyer-seller rule does not apply "where there is advanced planning among the alleged co-conspirators to deal in wholesale quantities of drugs obviously not intended for personal use . . . [u]nder such circumstances, the participants in the transaction may be presumed to know that they are part of a broader conspiracy"). Accordingly, the evidence does not support Defendant's buyer-seller argument. For this reason, this Court did not err in denying Martinez's request to include a buyer-seller instruction in the jury charge.

\* \* \*

---

[5]This case is factually distinguishable from the Second Circuit's recent decision in Brock, in which the court reversed the defendant's conspiracy conviction based on its finding that there existed only a buyer-seller relationship. 789 F.3d at 65. In Brock, the buyer did not exclusively purchase from the seller and the seller never "fronted" the buyer drugs. Id. at 64. The evidence is the opposite here.

Martinez has failed to establish that insufficient evidence underlies his conviction on Count 1 or that the jury's guilty verdict was the product of erroneous or misleading jury instructions. His motion seeking a judgment of acquittal on those grounds is therefore denied.

**B.      Martinez's Rule 33 Motion**

**1.      Rule 33 of the Federal Rules of Criminal Procedure**

Rule 33 of the Federal Rules of Criminal Procedure provides that a court may grant a motion for a new trial "if the interest of justice so requires." A district court "has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority 'sparingly' and only in 'the most extraordinary circumstances.'" United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001) (quoting United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992)). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be manifest injustice . . . . There must be a real concern that an innocent person may have been convicted." Ferguson, 246 F.3d at 134. A reviewing court must be satisfied that "competent, satisfactory and sufficient evidence" in the record supports the jury verdict. Sanchez, 969 F.2d at 1414 (internal quotation marks omitted).

Here, Martinez argues that, in addition to the errors already discussed above, this Court's jury instructions were erroneous because they did not specifically define Count 1 of the conspiracy. A defendant challenging jury instructions must demonstrate "error and ensuing prejudice." United States v. Quinones, 511 F.3d 289, 313-14 (2d Cir. 2007) (citation omitted). Error is found when, "viewed as a whole, [the jury instruction] 'either

failed to inform the jury adequately of the law or misled the jury about the correct legal rule.'" Id. at 314 (citations omitted); see also United States v. Sabhnani, 599 F.3d 215, 247 (2d Cir. 2010).

Martinez's jury-instruction argument is an offshoot of his contention that Count 1 charged "the Leeper Conspiracy." It is premised on Martinez's speculation that "it is highly doubtful that the jury knew what conspiracy was charged in Count 1." (Docket No. 545, ¶¶ 23, 69.) But this claim of confusion finds no support in the record: the jury did not send any notes asking for Count 1 to be clarified, nor did the polling of the jurors reveal any doubts among them. This Court used the standard Sand treatise instructions to charge the jury, which provided an accurate explanation of the applicable legal principles. Martinez has provided no authority supporting his argument that these instructions were either inadequate or that this Court was required to identify the exact parameters of the charged conspiracy, which is ultimately the jury's job to determine. As noted above, the government provided sufficient proof of the conspiracy involving Martinez, Turner, Quentin Leeper, and others, which the jury found proved Martinez's guilt beyond a reasonable doubt. And this was the jury's finding despite Martinez having been provided ample opportunity to argue his theory that no conspiracy, a different conspiracy, or multiple conspiracies existed. The jury was simply not convinced. Consequently, this Court finds that Martinez has demonstrated no "error or ensuing prejudice" arising from the jury instructions. Quinones, 511 F.3d at 313-14.

\* \* \*

For purposes of Rule 33, the jury's verdict is fully supported by competent evidence and nothing Martinez presents approaches manifest injustice or gives rise to a real concern

that an innocent person may have been convicted. See Ferguson, 246 F.3d at 134. Martinez is therefore not entitled to a new trial, and his request for one is denied.

## IV. CONCLUSION

For the reasons stated above, Martinez's Motion for a Judgment of Acquittal, or in the alternative, for a New Trial, is denied.

## V. ORDERS

IT HEREBY IS ORDERED, that Martinez's Motion for a Judgment of Acquittal, or in the alternative, for a New Trial (Docket No. 545) is DENIED.

SO ORDERED.


Dated: September 25, 2015
       Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge