UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    v.                                           **DECISION AND ORDER**
                                                     10-CR-233S (1)

JOSE MARTINEZ a/k/a "Noelle,"

                       Defendant.

## I. INTRODUCTION

Presently before this Court is the government's motion for entry of a preliminary order of forfeiture pursuant to 21 U.S.C. § 853 (a)(1) against Defendant Jose Martinez. (Docket No. 561.) The government contends that forfeiture is proper and required as a result of Martinez's conviction after trial for conspiring, in violation of 21 U.S.C. § 846, to possess with intent to distribute, and to distribute, 500 grams or more of cocaine and 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B). (Docket No. 530.) Martinez, who elected to have this Court determine forfeiture, contends that the government has failed to meet its burden of proving, by a preponderance of the evidence, that it is entitled to the preliminary order of forfeiture that it seeks.

For the reasons explained below, this Court will grant the government's request for entry of a preliminary order of forfeiture in the amount of $170,000.

## II. BACKGROUND[1]

**A.  Trial Evidence**

On August 12, 2010, a federal grand jury returned a six-count indictment against

---

[1]This section is largely taken from this Court's previous decision denying Martinez's post-trial motions. See United States v. Jose Martinez, No. 10-CR-233S(1), 2015 WL 5673115 (W.D.N.Y. Sept. 25, 2015).

Martinez and four co-defendants.[2] (Docket No. 1.) Only Count 1 is relevant here. It charged Martinez alone with conspiring to possess with intent to distribute, and to distribute, 500 grams or more of cocaine and 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 846. (Docket No. 1.)

After vigorous pretrial proceedings, Martinez and three of his co-defendants went to trial on a six-count redacted indictment (Docket No. 529), beginning on May 12, 2014 (Docket No. 457). Relating to Count 1, the government presented evidence of the drug conspiracy involving Martinez and Quincy Turner (and others), most of which came by way of information learned through two proffer sessions that law enforcement conducted with Turner after his arrest.

Sergeant Investigator James Rensel and Lieutenant John W. Runkle, both of the Chautauqua County Sheriff's Department, interviewed Turner in April and May 2008. (Docket No. 553 at 4, 12, 91; Docket No. 554 at 4, 16; Docket No. 558 at 5, 83, 86.) Over the course of those two sessions, Turner told Rensel and Runkle that he (Turner) received kilogram quantities of cocaine from Martinez (also known as "Rico Suave" or "Noelle"), and then sold the cocaine to an individual named Quentin Leeper, who then sold the cocaine to others such as Koran Leeper, Millicent Leeper, and Ray Hodnett, for further distribution. (Docket No. 553 at 15, 17, 20, 46; Docket No. 554 at 32–34, 36–38, 101; Docket No. 557 at 123–128, 172, 179, 181, 182; Docket No. 558 at 51, 52, 86, 141, 148; Docket No. 559 at 12, 37.) Although Turner most often purchased cocaine outright from Martinez, and Quentin Leeper most often purchased cocaine outright from Turner, there were occasions when Martinez would "front" cocaine to Turner and Turner would "front" cocaine to Quentin

---

[2]One co-defendant pled guilty before trial. (Docket No. 157.)

Leeper. (Docket No. 555 at 32; Docket No. 556 at 36, 40; Docket No. 557 at 137, 138.) There were also occasions when Quentin Leeper would further "front" drugs to his customers, including Koran Leeper. (Docket No. 557 at 126.) "Front" is a term used to describe providing drugs on consignment. (Docket No. 557 at 184.)

Among other drug transactions, between late 2007 and April 2008, Turner sold Quentin Leeper three kilograms of cocaine, each of which Turner got from Martinez, either through outright purchase or by fronting. (Docket No. 553 at 15, 17, 19, 20, 24; Docket No. 554 at 32, 36, 101, 129; Docket No. 558 at 75.) On one occasion, Turner pooled money with Quentin Leeper to purchase a kilogram of cocaine from Martinez. (Docket No. 558 at 75.)

Quentin Leeper largely confirmed the testimony from Rensel and Runkle. Quentin Leeper testified that he and Quincy Turner grew up together and were very close. (Docket No. 555 at 10; Docket No. 556 at 28.) At one time, Quentin Leeper had a source of cocaine in Los Angeles, California, known as "Cool." (Docket No. 555 at 21-30; Docket No. 556 at 35.) When "Cool" could no longer supply Quentin Leeper, Quincy Turner found him a new source. (Docket No. 555 at 31; Docket No. 556 at 40; Docket No. 557 at 129.) Once Turner found the new source, which turned out to be Martinez, Turner became Quentin Leeper's source of supply. (Docket No. 555 at 31, 32.) Turner told Quentin Leeper that his (Turner's) source was Martinez, referring to Martinez by his nickname "Rico Suave." (Docket No. 555 at 93, 94; Docket No. 556 at 74; Docket No. 558 at 148; Docket No. 559 at 37.) Quentin Leeper told his cousin, Koran Leeper, that his (Quentin Leeper's) source was Turner. (Docket No. 557 at 133.) Koran Leeper and others also knew that Turner's source was Martinez, though Koran Leeper knew Martinez as "Rico Suave," "O Boy," or "Noelle." (Docket No. 557 at 136, 189, 190, 196, 197.) Each nickname was

3

associated with Martinez.  (Docket No. 557 at 148, 149, 189; Docket No. 558 at 38; Docket No. 559 at 58.)

Brian Wilson, one of Quincy Turner's friends, also testified about Martinez serving as the source for Turner and Quentin Leeper.  (Docket No. 557 at 5.)  Wilson testified that he was present in March 2008 when Turner purchased cocaine from Martinez in the parking lot of a grocery store, which was consistent with Turner telling Rensel and Runkle that he and Martinez often met in parking lots to complete their drug transactions.  (Docket No. 553 at 24; Docket No. 554 at 70; Docket No. 557 at 5–8, 73, 84.)  Turner, Wilson, and Martinez met in the parking lot, at which time Turner retrieved a shoe box full of money from his car and drove away with Martinez, leaving Wilson behind.  (Docket No. 557 at 9-11, 85, 86, 112, 113.)  When Turner came back, he had two packages of what Wilson recognized to be cocaine.  (Docket No. 557 at 11-14, 87, 88, 96, 98.)  The timing of this transaction corresponds to Quentin Leeper's testimony that Turner sold him a kilogram of cocaine in March 2008 for $30,000.  (Docket No. 555, at 38, 39, 45, 46; Docket No. 559 at 33.)  Koran Leeper, Quentin Leeper's cousin, corroborated this testimony, testifying that Quentin Leeper purchased a kilogram of cocaine from Turner in March 2008.  (Docket No. 557 at 227.)  According to Wilson, Turner told him that everyone in Jamestown, N.Y., got their drugs from Martinez.  (Docket No. 557 at 15, 99, 110, 111.)

The nine-week trial concluded on July 11, 2014.  (Docket No. 526.)  Upon the close of the government's proof, this Court denied Martinez's Rule 29 motion.  (Docket Nos. 517, 518.)  The jury subsequently found Martinez guilty of Count 1 and acquitted him and his co-defendants of Counts 2-6.  (Docket No. 530.)  Following the verdict, Martinez timely moved for judgment of acquittal or, alternatively, for a new trial, which this Court denied on September 25, 2015.  (Docket No. 291.)

4

B.      **Motion for Entry of a Preliminary Order of Forfeiture**

The government filed its motion for entry of a preliminary order of forfeiture on August 22, 2014. (Docket No. 561.) In support of its motion, the government filed the affidavit of James Rensel, Sergeant Investigator for the Chautauqua County Sheriff's Office and a Task Force Agent for the Drug Enforcement Administration. (Rensel Aff., Docket No. 561-1, ¶ 1.) Rensel reiterates the evidence offered at trial, particularly the information that Turner provided during his two proffer sessions. (Rensel Aff., ¶¶ 6, 8.) Turner told Rensel that he (Turner) bought three kilograms of cocaine from Martinez for Quentin Leeper over a six-month span, paying Martinez approximately $30,000 per kilogram. (Rensel Aff., ¶ 6 (h).) Quentin Leeper, in turn, broke down each kilogram and further distributed it. According to Rensel, one kilogram of cocaine distributed on the street in 2007-2008 in the Western New York area would yield approximately $100,000. (Rensel Aff., ¶ 14.) Turner also told Rensel that Martinez fronted him one or two ounces of cocaine per week for about a year for $1,000 per ounce. (Rensel Aff., ¶¶ 8 (d), (e).) Rensel also recounts his proffer session with Koran Leeper, wherein Koran Leeper told him that Turner "hooked up" Quentin Leeper with three kilograms of cocaine. (Rensel Aff., ¶ 11 (d).)

### III. DISCUSSION

A.      **Legal Standards Governing Criminal Forfeiture**

Criminal forfeiture, as an aspect of sentencing, is distinct from the determination of criminal guilt, and for that reason, proof beyond a reasonable doubt is not required. See Libretti v. United States, 516 U.S. 29, 49, 116 S.Ct. 356, 367-68, 133 L.Ed.2d 271, 289 (1995). Rather, after a defendant is convicted, the government must establish that the property at issue is subject to criminal forfeiture only by a preponderance of the evidence. See United States v. Capoccia, 503 F.3d 103, 116 (2d Cir. 2007) ("Sentencing courts

5

determine forfeiture amounts by a preponderance of the evidence.") (citing United States v. Fruchter, 411 F.3d 377, 383 (2d Cir. 2005)).

The court is tasked with determining "what property is subject to forfeiture under the applicable statute" based on the evidence of record, including trial evidence, and evidence developed at a forfeiture hearing, if any.[3] FED. R. CRIM. P. 32.2(b)(1)(A); United States v. Peters, 732 F.3d 93, 98 (2d Cir. 2013); Capoccia, 503 F.3d at 109-110. For the forfeiture of specific property, "the court must determine whether the government has established the requisite nexus between the property and the offense." FED. R. CRIM. P. 32.2(b)(1)(A). For imposition of a personal money judgment, "the court must determine the amount of money that the defendant will be ordered to pay." Id.

Here, the government must satisfy the requirements of the criminal forfeiture provisions in 21 U.S.C. § 853 (a)(1), which are as follows:

> Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law –
>
> (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;
>
> . . .

This forfeiture provision must be liberally construed to effectuate its remedial purpose. See 21 U.S.C. § 853(o). In addition, there is a rebuttable presumption that property acquired during the period of the criminal conduct or within a reasonable time

---

[3] Although Martinez contests forfeiture, see Federal Rule of Criminal Procedure 32.2 (b)(1)(B), this Court finds that no forfeiture hearing is necessary. The forfeiture findings here are based on the trial evidence, which Martinez had a full and fair opportunity to challenge. In addition, Martinez's forfeiture arguments mirror his arguments for judgment of acquittal and a new trial, which this Court has already denied. Consequently, any further hearing would likely be a rehash of the trial and would therefore be cumulative and not in the interests of judicial economy.

thereafter is subject to forfeiture if there is no likely source other than the criminal conduct at issue. See 21 U.S.C. § 853 (d). In drug conspiracy cases, forfeiture liability for the full amount of the proceeds obtained by the conspiracy is joint and several among all conspirators. See United States v. Roberts, 660 F.3d 149, 165 (2d Cir. 2011); United States v. Candelaria-Silva, 166 F.3d 19, 64-65 (1st Cir. 1999).

If the court finds that property is subject to forfeiture, it must enter a preliminary order of forfeiture setting forth the amount of any money judgment or directing the forfeiture of specific property without regard to any third party interests, which are determined in an ancillary proceeding under Rule 32.2(c). FED. R. CRIM. P. 32.2(b)(2)(A).

Finally, no order of forfeiture may issue without proper notice to the defendant. See FED. R. CRIM. P. 7(c)(1) and 32.2(a).

**B.     Forfeiture of Proceeds from the Crime**

As alleged proceeds of his crime, the government seeks a money judgment against Martinez for $170,000. The government does so knowing that this figure is likely far less than what was actually realized through this conspiracy. As noted above, Martinez's sale of three kilograms of cocaine to Turner for further sale by Quentin Leeper alone would have produced $300,000. Nonetheless, the government adheres to the forfeiture amount it alleged in the indictment and therefore seeks forfeiture of only $170,000.

Martinez opposes the government's forfeiture request by arguing that the conspiracy he was charged with in Count 1 is the "Leeper conspiracy," not a conspiracy involving himself and Turner. Martinez's "Leeper conspiracy" argument is a familiar refrain in this prosecution, one that this Court most recently rejected in resolving Martinez's post-trial motions. See United States v. Jose Martinez, No. 10-CR-233S(1), 2015 WL 5673115 (W.D.N.Y. Sept. 25, 2015) (finding Martinez's "Leeper conspiracy" argument to be a

"nonstarter" because "the indictment has simply never been cabined in the manner Martinez suggests"). It serves as no defense to the government's forfeiture request.

Consistent with this Court's findings in its decision resolving Martinez's post-trial motions, this Court finds by a preponderance of the trial evidence that Martinez and Turner (and others) engaged in a conspiracy to possess with intent to distribute, and to distribute, controlled substances. Id. at *6. It further finds that the trial evidence supports a finding that at least $170,000 was generated as proceeds from the drug conspiracy involving Martinez, Turner, and others. Gross proceeds from the final distribution (through Quentin Leeper) of the three kilograms that Martinez sold Turner alone would have amounted to approximately $300,000. See United States v. Colon, 522 F. Appx. 61, 62 (2d Cir. 2013) (upholding calculation of forfeiture in drug-trafficking conspiracy based on gross proceeds of drug sales). The conspiracy engaged in other transactions as well, such as Turner's weekly purchase of one or two ounces of cocaine from Martinez for more than a year. Thus, the government's forfeiture request is conservative and does not encompass all of the proceeds generated by the conspiracy. Based on the trial evidence, this Court finds that the government is entitled to forfeiture in the amount of $170,000.

## C. The Eighth Amendment

Punitive criminal forfeiture is subject to proportionality review under the Excessive Fines Clause of the Eighth Amendment. See United States v. Bajakajian, 524 U.S. 321, 333-34, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998). "The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." Id. at 334. Forfeiture is unconstitutionally excessive if "it is grossly disproportional to the gravity of a defendant's offense." Id. at 334; see also United States v. Varrone, 554 F.3d 327, 331 (2d Cir. 2009).

The United States Supreme Court has instructed district courts to "compare the amount of the forfeiture to the gravity of the defendant's offense. If the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional." Bajakajian, 524 U.S. at 336-37. Four factors inform this determination: (1) the "essence" of the crime and its relation to other criminal activity; (2) whether the defendant fits into the class of persons for whom the statute was principally designed; (3) the maximum sentence and fine that could be imposed, and (4) the harm caused by defendant's criminal conduct. See Bajakajian, 524 U.S. at 337-39; see also Varrone, 554 F.3d at 331 (applying Bajakajian factors); United States v. Collado, 348 F.3d 323, 328 (2d Cir. 2003) (per curiam) (same); United States v. Sabhnani, 566 F.Supp.2d 148, 155 (E.D.N.Y. 2008) (same); United States v. Rudaj, 2006 WL 1876664, at *7 (same).

Because the forfeiture here consists entirely of proceeds obtained as a result of Martinez's criminal conduct—indeed *less* than what was likely obtained—there is some question as to whether forfeiture is even punitive in this context, such that the proportionality analysis applies at all. See, e.g., Rudaj, 2006 WL 1876664, at *8 (collecting cases and noting that "[s]everal courts of appeal concluded since Bajakajian that the forfeiture of proceeds, as opposed to legally acquired property later involved in a criminal offense, does not implicate Eighth Amendment concerns of disproportionality.") Even assuming that it does, this Court finds that application of the Bajakajian factors results in a finding that the forfeiture here is not grossly disproportionate to the gravity of Martinez's criminal conduct.

## IV. CONCLUSION

For the reasons stated above, this Court finds that the government is entitled to forfeiture of $170,000, pursuant to 21 U.S.C. § 853 (a)(1) as a result of Martinez's crime

of conviction. The government's request for entry of a preliminary order of forfeiture is therefore granted, and the government is directed to submit a proposed preliminary order of forfeiture consistent with this decision within 10 days of its filing date.

## V. ORDERS

IT HEREBY IS ORDERED, that the government's Request for Entry of a Preliminary Order of Forfeiture (Docket No. 561) is GRANTED.

FURTHER, that the government shall submit a proposed preliminary order of forfeiture consistent with this decision within 10 days of its filing date.

SO ORDERED.


Dated:   November 21, 2015
         Buffalo, New York

                                          /s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                          United States District Judge