UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

         v.

JOSE MARTINEZ,

                   Defendant.

**DECISION AND ORDER**
21-CV-271S
10-CR-233S (1)

## I. INTRODUCTION

Presently before this Court is petitioner Jose Martinez's counseled[1] Motion to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255.  (Docket No. 697.[2])  For the reasons discussed below, Martinez's motion is denied.

## II. BACKGROUND[3]

On August 12, 2010, a federal grand jury returned a six-count indictment against Martinez and four co-defendants.  (Docket No. 1.)  Only Count 1 is relevant here.  It charged Martinez alone with conspiring to possess with intent to distribute, and to distribute, 500 grams or more of cocaine and 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 846.  (Id.)

---

[1] At Martinez's request, this Court appointed counsel on July 15, 2020, pursuant to 28 U.S.C. § 2255 (g) and 18 U.S.C. § 3006A (a)(2)(B).  (Docket No. 695.)

[2] All docket citations are to the criminal case: 10-CR-233S (1).

[3] These and additional facts can be found in this Court's previous decision resolving Martinez's post-trial motions.  See United States v. Martinez, No. 10-CR-233S (1), 2015 WL 5673115 (W.D.N.Y. Sept. 25, 2015).

After vigorous pretrial proceedings, Martinez and three of his co-defendants proceeded to trial on a six-count redacted indictment[4] (Docket No. 529), beginning on May 12, 2014 (Docket No. 457). Relating to Count 1, the government presented evidence of a drug conspiracy involving Martinez and Quincy Turner (and others), most of which came by way of information learned through two proffer sessions that law enforcement conducted with Turner after his arrest.

Sergeant Investigator James Rensel and Lieutenant John W. Runkle, both of the Chautauqua County Sheriff's Department, interviewed Turner in April and May 2008. (Docket No. 553 at 4, 12, 91; Docket No. 554 at 4, 16; Docket No. 558 at 5, 83, 86.) Over the course of those two sessions, Turner told Rensel and Runkle that he (Turner) received kilogram quantities of cocaine from Martinez (also known as "Rico Suave" or "Noelle"), and then sold the cocaine to an individual named Quentin Leeper, who then sold the cocaine to others such as Koran Leeper, Millicent Leeper, and Ray Hodnett, for further distribution. (Docket No. 553 at 15, 17, 20, 46; Docket No. 554 at 32–34, 36–38, 101; Docket No. 557 at 123–128, 172, 179, 181, 182; Docket No. 558 at 51, 52, 86, 141, 148; Docket No. 559 at 12, 37.) Although Turner most often purchased cocaine outright from Martinez, and Quentin Leeper most often purchased cocaine outright from Turner, there were occasions when Martinez would "front" cocaine to Turner and Turner would "front" cocaine to Quentin Leeper. (Docket No. 555 at 32; Docket No. 556 at 36, 40; Docket No. 557 at 137, 138.) There were also occasions when Quentin Leeper would further "front"

---

[4] This was a death-eligible case. Because the Attorney General elected not to pursue the death penalty against any of the defendants (Docket Nos. 125, 278, 279, 280), the indictment was redacted to eliminate the Notice of Special Findings sections. See 18 U.S.C. §§ 3591, 3592.

drugs to his customers, including Koran Leeper.  (Docket No. 557 at 126.)  "Front" is a term used to describe providing drugs on consignment.  (Id. at 184.)

Among other drug transactions, between late 2007 and April 2008, Turner sold Quentin Leeper three kilograms of cocaine, each of which Turner got from Martinez, either through outright purchase or by fronting.  (Docket No. 553 at 15, 17, 19, 20, 24; Docket No. 554 at 32, 36, 101, 129; Docket No. 558 at 75.)  On one occasion, Turner pooled money with Quentin Leeper to purchase a kilogram of cocaine from Martinez.  (Docket No. 558 at 75.)

Quentin Leeper largely confirmed the testimony from Rensel and Runkle.  Quentin Leeper testified that he and Turner grew up together and were very close.  (Docket No. 555 at 10; Docket No. 556 at 28.)  At one time, Quentin Leeper had a source of cocaine in Los Angeles, California, known as "Cool."  (Docket No. 555 at 21-30; Docket No. 556 at 35.)  When "Cool" could no longer supply Quentin Leeper, Turner found him a new source.  (Docket No. 555 at 31; Docket No. 556 at 40; Docket No. 557 at 129.)  Once Turner found the new source, which turned out to be Martinez, Turner became Quentin Leeper's source of supply.  (Docket No. 555 at 31, 32.)  Turner told Quentin Leeper that his (Turner's) source was Martinez, referring to Martinez by his nickname "Rico Suave." (Docket No. 555 at 93, 94; Docket No. 556 at 74; Docket No. 558 at 148; Docket No. 559 at 37.)  Quentin Leeper told his cousin, Koran Leeper, that his (Quentin Leeper's) source was Turner.  (Docket No. 557 at 133.)  Koran Leeper and others also knew that Turner's source was Martinez, though Koran Leeper knew Martinez as "Rico Suave," "O Boy," or "Noelle."  (Docket No. 557 at 136, 189, 190, 196, 197.)  Each nickname was associated

with Martinez.  (Docket No. 557 at 148, 149, 189; Docket No. 558 at 38; Docket No. 559 at 58.)

Brian Wilson, one of Quincy Turner's friends, also testified about Martinez serving as the source for Turner and Quentin Leeper.  (Docket No. 557 at 5.)  Wilson testified that he was present in March 2008 when Turner purchased cocaine from Martinez in the parking lot of a grocery store, which was consistent with Turner telling Rensel and Runkle that he and Martinez often met in parking lots to complete their drug transactions.  (Docket No. 553 at 24; Docket No. 554 at 70; Docket No. 557 at 5–8, 73, 84.)  Turner, Wilson, and Martinez met in the parking lot, at which time Turner retrieved a shoe box full of money from his car and drove away with Martinez, leaving Wilson behind.  (Docket No. 557 at 9-11, 85, 86, 112, 113.)  When Turner came back, he had two packages of what Wilson recognized to be cocaine.  (Id. at 11-14, 87, 88, 96, 98.)  The timing of this transaction corresponds to Quentin Leeper's testimony that Turner sold him a kilogram of cocaine in March 2008 for $30,000.  (Docket No. 555, at 38, 39, 45, 46; Docket No. 559 at 33.)  Koran Leeper, Quentin Leeper's cousin, corroborated this testimony, testifying that Quentin Leeper purchased a kilogram of cocaine from Turner in March 2008.  (Docket No. 557 at 227.)   According to Wilson, Turner told him that everyone in Jamestown, N.Y., got their drugs from Martinez.  (Id. at 15, 99, 110, 111.)

The nine-week trial concluded on July 11, 2014.  (Docket No. 526.)  Upon the close of the government's proof, this Court denied Martinez's Rule 29 motion.  (Docket Nos. 517, 518.)  The jury subsequently found Martinez guilty of Count 1 and acquitted him and his co-defendants of Counts 2-6.  (Docket No. 530.)

Following the verdict, Martinez timely filed a motion for judgment of acquittal or a new trial, which this Court denied on September 25, 2015.  See United States v. Martinez, No. 10-CR-233S (1), 2015 WL 5673115 (W.D.N.Y. Sept. 25, 2015).  Involved sentencing proceedings then ensued, with this Court ultimately sentencing Martinez on August 24, 2016, to, *inter alia*, a term of life imprisonment.  (Docket Nos. 628, 630.)

Martinez then appealed to the United States Court of Appeals for the Second Circuit, which affirmed his conviction and sentence on April 25, 2019.  See United States v. Martinez, 769 F. App'x. 12 (2d Cir. 2019).  In its summary order, the Second Circuit rejected Martinez's arguments that (1) his conviction was not supported by sufficient evidence; (2) this Court erred by denying his request to provide the jury with a buyer-seller instruction; (3) this Court erred in denying his lawyer's objections with the proviso that he could cross-examine the government's witnesses; (4) the government's cumulative errors required reversal; and (5) this Court violated his constitutional rights by considering acquitted conduct in imposing sentence.  See id. at *13.  Instead, the Second Circuit found that the trial evidence was sufficient to support Martinez's conviction; that there was no evidentiary basis for Martinez's buyer-seller theory of defense; that this Court's explanatory comments regarding cross examination did not deny Martinez a fair trial; that the alleged errors by the government—late disclosure of documents; inadequate preparation of witnesses; inappropriate trial behavior—did not deny Martinez a fair trial; and that this Court did not err by considering acquitted conduct[5] at sentencing.  See id.

---

[5] Judge Pooler filed a short concurring opinion expressing her general belief that the consideration of acquitted conduct at sentencing is fundamentally unfair.  See Martinez, 769 F. App'x at 17 (citing Jones v. United States, 574 U.S. 98, 135 S. Ct. 8, 190 L. Ed. 2d 279 (2014) (Scalia, J., dissenting from denial of certiorari) and United States v. Sabillon-Umana, 772 F.3d 1328, 1331 (10th Cir. 2014) (Gorsuch, Circuit Judge)).

at *14-17.

On February 24, 2020, the United States Supreme Court denied Martinez's petition for writ of certiorari.  See Martinez v. United States, 140 S. Ct. 1128 (Mem), 206 L. Ed. 2d 191 (2020).

On February 17, 2021, Martinez timely filed the instant § 2255 petition,[6] which the government opposes.  (Docket Nos. 697, 704.)  Martinez thereafter filed a number of pro se submissions and motions for relief unrelated to his § 2255 petition, the last of which were denied on October 19, 2022.  (See, e.g., Docket Nos. 708 (denying pro se motion to amend § 2255 petition), 728 (denying compassionate-release related motions), 735 (denying motion for compassionate release), 742 (denying various counsel-related motions).  Martinez's motion is fully briefed, and this Court finds oral argument unnecessary.

### III. DISCUSSION

**A.      § 2255 Proceedings**

Twenty-eight U.S.C. § 2255 allows federal prisoners to challenge the legality of their sentences.  It provides, in pertinent part, that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (a).

Importantly, a § 2255 motion is not a substitute for an appeal.  See Bousley v.

---

[6] A 1-year statute of limitations applies to § 2255 petitions.  See 28 U.S.C. § 2255 (f).

United States, 523 U.S. 614, 621, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'") (quoting Reed v. Farley, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300, 129 L. Ed. 2d 277 (1994)).  Relief under § 2255 is therefore narrowly limited, with collateral attack on a final criminal judgment available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice."  Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (per curiam) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks omitted)).  This narrow limitation preserves respect for finality, allows for the efficient allocation of judicial resources, and recognizes an aversion to retrying issues long after they occur.  See Bokun, 73 F.3d at 12 (citations omitted).

To shape the narrow relief available under § 2255, two procedural rules apply to make it more difficult for a defendant to upset a final criminal judgment on collateral review.  See Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010).  First, the "mandate rule" bars re-litigation of issues already decided on direct appeal.  See id.; see also Burrell v. United States, 467 F.3d 160, 165 (2d Cir. 2006); United States v. Perez, 129 F.3d 255, 260 (2d Cir. 1997) ("[I]t is well-established that issues decided on direct appeal may not be re-litigated in the context of a petition under § 2255.")  This includes "not only . . . matters expressly decided by the appellate court, but also . . . re-litigation of issues impliedly resolved by the appellate court's mandate."  Yick Man Mui, 614 F.3d at 53 (citing United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001)).  This rule also bars ineffective-assistance-of-counsel claims that were raised and resolved on direct appeal,

as well as those involving factual predicates that while not explicitly raised on direct appeal, were impliedly rejected by the appellate court mandate.  See id. at 53-54 (citations omitted).  An exception to this rule exists for cases involving intervening changes in the law, in which case the petitioner "must show that there is new law which, when applied to their claims, would result in a different disposition."  Chin v. United States, 622 F.2d 1090, 1092 (2d Cir. 1980) ("Reconsideration [of claims previously raised on direct appeal] is permitted only where there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal.") (citing United States v. Loschiavo, 531 F.2d 659, 664 (2d Cir. 1976)).

Second, the "procedural default" rule bars the collateral review of claims that could have been raised on direct appeal, unless the petitioner shows cause for failing to raise the claims on direct review and actual "prejudice" or actual innocence.  See Bousley, 523 U.S. at 622-23 (citations omitted); see also Marone v. United States, 10 F.3d 65, 67 (2d Cir. 1993) ("In order to raise a claim that could have been raised on direct appeal, a § 2255 petitioner must show cause for failing to raise the claim at the appropriate time and prejudice from the alleged error.")  This rule does not apply to ineffective-assistance-of-counsel claims, which may be brought in a § 2255 motion regardless of whether they could have been raised, or were raised, on direct appeal.  See Massaro v. United States, 538 U.S. 500, 508-09, 123 S. Ct. 1690, 1696, 155 L. Ed. 2d 714 (2003).

Discovery in § 2255 proceedings is governed by Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts.  Leave of court is required to engage in discovery, which may be granted for good cause.  See Rule 6 (a).  Such

discovery is conducted under the Federal Rules of Criminal or Civil Procedure, or "in accordance with the practices and principles of law."[7]  Id.  The party requesting discovery must provide reasons for the request, which must "include any proposed interrogatories and requests for admission, and must specify any requested documents."  Rule 6 (b).

A petitioner may also be entitled to an evidentiary hearing.  Section 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  To determine whether a hearing is necessary, the court "must review the answer, any transcripts and records of prior proceedings, and any [additional materials submitted by the parties]."  Rule 8 (a).  If a hearing is necessary, the court must appoint an attorney to any moving party who qualifies for the appointment of counsel under 18 U.S.C. § 3006A.  See Rule 8 (c).  A hearing is generally warranted only where the petitioner establishes a plausible claim.  See Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009).

The Second Circuit has further described the standard for holding a § 2255 evidentiary hearing as follows:

> In ruling on a motion under § 2255, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see, e.g., Pham v. United States, 317 F.3d 178, 185 (2d Cir. 2003) (§ 2255 does not permit summary dismissals of motions that present facially valid claims).  However, the filing of a motion pursuant to § 2255 does not automatically entitle the movant to a hearing; that section does not imply that there must be a hearing where the allegations are "vague, conclusory, or palpably incredible." Machibroda v. United States, 368 U.S. 487, 495, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962); see, e.g., Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001).  To warrant a hearing, the motion must set forth specific facts supported by competent

---

[7] "If necessary for effective discovery, the judge must appoint an attorney for a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A."  Rule 6 (a).

> evidence, raising detailed and controverted issues of fact that,
> if proved at a hearing, would entitle him to relief.  See, e.g.,
> Machibroda, 368 U.S at 494, 82 S. Ct. 510; United States v.
> Aiello, 814 F.2d 109, 113-14 (2d Cir. 1987).

Gonzalez v. United States, 722 F.3d 118, 130-31 (2d Cir. 2013).

The petitioner bears the burden of proving entitlement to relief under § 2255 by a preponderance of the evidence.  See Galviz Zapata v. United States, 431 F.3d 395, 399 (2d Cir. 2005) (citing Williams v. United States, 481 F.2d 339, 346 (2d Cir. 1973)); see also Triana v. United States, 205 F.3d 36, 30 (2d Cir. 2000).

**B.    Martinez's Claims**

Martinez asserts three grounds for relief in his petition: (1) ineffective assistance of trial counsel; (2) denial of his constitutional rights at sentencing; and (3) denial of a fair trial due to prosecutorial error.   (See Docket No. 697-1.)  These claims are addressed below.

**1.  Martinez's ineffective-assistance-of-counsel claim fails.**

Martinez asserts that he was denied his Sixth Amendment right to effective assistance of counsel because his trial counsel engaged in egregious, unprofessional conduct that "gravely" prejudiced his defense.   The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence."  U.S. CONST. amend VI.  It is well established that "the right to counsel is the right to the effective assistance of counsel."  Eze v. Senkowski, 321 F.3d 110, 124 (2d Cir. 2003) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).

Ineffective-assistance-of-counsel claims may be brought in a collateral proceeding under § 2255 regardless of whether they could have been raised, or were raised, on direct

appeal.[8]  See Massaro, 538 U.S. at 508-09.  To succeed on his ineffective-assistance-of-counsel claims and to secure reversal of his conviction on the ground of inadequate legal representation, Martinez must establish both prongs of the two-part test from Strickland v. Washington: (1) that his counsel's performance "fell below an objective standard of reasonableness;" and (2) that "the deficient performance prejudiced" him.  466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

To satisfy the first prong of the Strickland test, Martinez must establish that his counsel's conduct fell below "an objective standard of reasonableness" under "prevailing professional norms" such that it was "outside the wide range of professionally competent assistance."  Id. at 688, 690.  Under this prong, the court "must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and be watchful 'to eliminate the distorting effects of hindsight.'"  Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) (quoting Strickland, 466 U.S. at 689).  This is because "[t]here are countless ways to provide effective assistance in any given case" and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way."  Strickland, 466 U.S. at 689 (internal citation omitted).  The question is ultimately "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."  Harrington v. Richter, 562 U.S. 86, 105, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

To satisfy the second prong of the Strickland test, Martinez must establish that his

---

[8] As noted above, however, the mandate rule still applies.  That is, ineffective-assistance-of-counsel claims that were raised and resolved on direct appeal, and any claims involving factual predicates that were impliedly rejected on direct appeal, are barred.  See Yick Man Mui, 614 F.3d at 53-54 (citations omitted).

attorney's "deficient performance prejudiced the defense" such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  See Strickland, 466 U.S. at 687, 694.  The Second Circuit normally "requires some objective evidence other than defendant's assertions to establish prejudice," Pham v. United States, 317 F.3d 182, 182 (2d Cir. 2003), because "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding," Strickland, 466 U.S. at 693.  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial."  Id. at 687.

Because both parts of the Strickland test must be satisfied for a petitioner to establish ineffective assistance of counsel, failure to satisfy one part of the test frees a district court from assessing whether the petitioner satisfied the other part of the test. Strickland, 466 U.S. at 697 (noting that a court need not "address both components of the [two-part Strickland] inquiry if the defendant makes an insufficient showing on one"); see also Stouse v. Leonardo, 928 F.2d 548, 556 (2d Cir. 1991).

Martinez first claims that his trial attorney's unprofessional conduct fell below an objective standard of reasonableness.  Alleging violations of several rules of professional conduct, Martinez maintains that trial counsel "created a circus-like atmosphere by engaging in undignified, discourteous, disruptive and, in some instances, rude behavior designed to interrupt the legal process which no doubt impacted upon the jurors' view of him as an advocate for his client which must have trickled down to their opinions of Mr. Martinez himself."  (Memorandum of Law, Docket No. 697-1, p. 19.)

The cited conduct includes trial counsel making 64 motions for mistrial and lodging "constant, sometimes relentless" and "downright rude" objections.  (See id. pp. 19-20.)  It

further includes disrespectful exchanges with the court (see id. pp. 20-21), a verbal attack on the court reporter after a disagreement about witness testimony (see id. pp. 23-29), and personal attacks on the prosecutor (see id. p. 29-30).  All of this, asserts Martinez, was due to trial counsel's "narcissistic personality" and desire to put on a show for the jury, and was very much consistent with his general pattern of inappropriate behavior, which in other contexts has led to multiple censures and reprimands and even a suspension from the practice of law.  (See id. pp. 18, 23, 31-37.)

Representative examples of the cited exchanges between trial counsel and this Court that occurred in front of the jury include the following:

| | |
|---|---|
| Counsel: | Objection, your Honor.  Are we talking about the Noelle that -- the person that identified themselves as Noelle, is that who we're asking about? |
| Court: | Overruled.  You may ask on cross-examination.  Overruled. |
| Counsel: | Holy cow. |
| Court: | And to the objection holy cow, that's not a legal objection, and that's overruled. |
| Counsel: | Just frustration, that's all. |
| Court: | I'm sorry? |
| Counsel: | It's just frustration. |

(Appellate Transcript, p. 1571.[9])

| | |
|---|---|
| Counsel: | Oh, my god.  Go ahead.  Fine.  You're the boss. |
| Court: | No. |
| Counsel: | Yeah, you are. |

---

[9] Counsel's transcript citations appear to be to the appellate record, not the record available in this court.  Given counsel's status as an officer of the court, the accuracy of the cited examples is assumed.

| | |
|---|---|
| Court: | I'm presiding over the trial. |
| Counsel: | I understand that.  You're the boss.  You're the judge.  I'll object to this witness testifying that he knows what "that" means. |
| Court: | All right.   You know, you can object.   I'm overruling the objection. |

(Id., pp. 3319-20.)

A portion of trial counsel's exchange concerning the court reporter, the majority of which occurred in the jury's absence, is as follows:

| | |
|---|---|
| Court: | Hold on one second.  Okay.  Because I don't know what [the witness] is going to say at this point. |
| Counsel: | He already said it. |
| Court: | I mean, I didn't hear it.  I didn't hear what he answered, so from my standpoint I don't know what he said . . . |

* * *

| | |
|---|---|
| Counsel: | . . . [Y]our Honor, I am moving for a mistrial with prejudice  based  upon  the  government's misconduct and not having properly prepared the witness. |
| Court: | Michelle, can you back up?  Did you get that? Was that the testimony? |
| Reporter: | I know I didn't hear all of it. |
| Counsel: | Wait a second.  Wait a second. |
| Court: | No, don't – wait a second. |
| Counsel: | She has just - - |
| Court: | Please don't.  Okay. |

14

| | | |
|---|---|---|
| Counsel: | She's a foot away.  She doesn't have that testimony.  That's exactly what happened. |
| Court: | Well, I didn't hear it either, . . . |
| Counsel: | Well, I did, and I'm hard of hearing. |
| Court: | Well, maybe – I don't know what you heard. |
| Counsel: | Well, then, let's ask everybody else. |
| Court: | But I didn't hear it.  And I'm going to ask Michelle to check her notes.  That's all I'm saying.  So back up, Michelle, see what you have there.  And I'm pretty close too, so I hear things reasonably well. |
| | [Testimony read back by reporter] |
| Court: | Okay.  And I didn't hear an answer. |
| Counsel: | That is ridiculous. |

(Id., pp. 1429-33.)

| | | |
|---|---|---|
| Prosecutor: | Judge, I do think he said through Bate.  I readily concede that that's what I heard.  Okay . . . |
| Counsel: | . . . And for the three of you that were near him not to hear Bate is ridiculous . . . |
| Court: | Well, that's ridiculous to make a statement like that, frankly. |
| Counsel: | No, it's not. |
| Court: | It is. |
| Counsel: | He said it out loud. |
| Court: | Well, I'm not going to argue with you. |
| Counsel: | I'm not going to argue either . . . |

(Id., pp. 1433-34.)

15

| | |
|---|---|
| Counsel: | Let's get a new court . . . who can write down what is said.  Let's get . . . I move for a new court reporter then. |
| Court: | You don't want to make that motion, do you? |
| Counsel: | I absolutely want to make -- this is too important for a -- to overcome. |
| Court: | No.  You want a new judge too? |
| Counsel: | I haven't gotten there yet. |

(Id., pp. 1433-34.)

Trial counsel's attack on the prosecutor, which again did not occur in front of the jury, consisted of the following comments:

> What I see is prosecutorial misconduct.  This isn't the first time.  It's the second time this morning.  I had made a motion long ago about prosecutorial misconduct.  Somebody in Buffalo in federal court has to take [the prosecutor] to task. And I'm asking you to do that.  I'm asking you to remove him from this case, because of these indiscretions, which are not accidental, for a prosecutor that has tried as many cases as [the prosecutor], because there is somewhere written that a prosecutor's role is not to convict people, but to see that there is a fair trial.  And he fits the mold of wanting to -- wanting to convict people.  He has no feelings for what fairness means.

> And, you know, I mean, I'm just sick and tired of him.  And you should be too.  How many times can you turn to him and say "well, you know you should have turned it over."  It's too late, too little.  Please get him off this case.  I move that he be restricted from trying this case . . .

> [The prosecutor], you know -- I had heard a lot of things coming into this case.  I had dealt with [the prosecutor] on the initial, and everything I've heard has come to fruition.  He is not a person that should be entrusted with the prosecution of a criminal case.  Maybe he should start doing forfeitures or something.  And I'm deadly serious about this.

(Id., pp. 320-21.)

Martinez maintains that trial counsel's conduct fell below an objective standard of reasonableness because it crossed the line "from zealous advocacy to child-like tantrum," created an "atmosphere of negativity," and caused the jurors to view him with disdain. (Memorandum of Law, Docket No. 697-1, pp. 21, 29, 37.)  This Court disagrees.

As the transcript excerpts demonstrate, trial counsel certainly did not deport himself as a model of decorum, either in front of the jury or in its absence.  But Martinez must demonstrate more than that.  He must show "that counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.  And he must do so in the face of the "strong presumption" that trial counsel's conduct fell "within the wide range of reasonable professional assistance. Id. at 689.

Martinez does not attribute any errors to trial counsel.  Instead, he protests that the lawyer *whom he retained* employed a brash, in-your-face, and at times combative litigation style that may not have set well with the jury.  But most of the cited exchanges occurred outside the jury's presence.  In any event, trial counsel is well known for this aggressive style and presumably often retained because of it.   What Martinez characterizes in hindsight as unprofessional and off-putting behavior can just as easily be seen as the presentation of a zealous and vigorous defense.  Martinez himself concedes that many of trial counsel's points were well taken, and he does not assert any substantive legal errors, unreasonable judgments, or bad advice.   Moreover, the transcript demonstrates that this Court at all times managed trial counsel's style reasonably and fairly and did not allow it to interrupt, distract, or derail the fair administration of the trial. While Martinez may now regret his choice of counsel, he fails to demonstrate that trial

counsel's performance was incompetent or otherwise constitutionally deficient.[10]   See Harrington, 562 U.S. at 105 (identifying the relevant inquiry as "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom").   He therefore fails the first Strickland prong, which alone defeats his claim.   See Strickland, 466 U.S. at 697 (holding that both Strickland prongs must be satisfied to establish ineffective assistance of counsel).

But even if Martinez had demonstrated representation that fell below an objective standard of reasonableness, he still fails to establish prejudice such that he would have been acquitted on Count 1 but for his lawyer's litigation style.   See Strickland, 466 U.S. at 687, 694.   Martinez's sole claim of prejudice is that the jury *must* have been prejudiced against him because his trial counsel's conduct was so distracting and obnoxious.   But Martinez offers no explanation, evidence, or argument as to how the outcome would have been different but for counsel's behavior, just speculation and assumption that the jury found counsel's behavior objectionable.   See Pham, 317 F.3d at 182 (noting that objective evidence other than the defendant's assertions is required to establish prejudice).

Weighing heavily against this pure speculation, however, is the jury's acquittal of Martinez on the counts pertaining to Turner's murder, which suggests that Martinez suffered no material prejudice.   Also weighing significantly against a finding of prejudice is the strength of the government's trial evidence, a synopsis of which is set forth above and in the Second Circuit's decision.   Martinez concedes that an agreement to engage in

---

[10] Tellingly, Martinez does not cite a single case involving like circumstances where ineffectiveness was found.   The only case cited—In re Cohen—involved an attorney charged with criminal contempt for willfully and deliberately engaging in conduct intended to obstruct the orderly administration of justice, a proceeding wholly apart from a § 2255 petition.   370 F. Supp. 1166 (S.D.N.Y. 1973).

a joint illegal controlled-substances venture existed, and multiple witnesses, including eyewitnesses, testified to Martinez's membership and significant role in the conspiracy. In the face of this strong evidence, and with no showing of particularized prejudice, this Court finds that Martinez fails to meet the second Strickland prong as well.  See United States v. O'Neil, 118 F.3d 65, 73 (2d Cir. 1997) (finding no reasonable probability that the outcome of the trial would have been different but for counsel's performance in light of the strength of the evidence against the defendant); Deida v. United States, No. 3:13-cv-1608 (SRU), 2017 WL 2661622, at * (D. Conn. June 20, 2017) ("Strong evidence of guilt will weigh against a finding that a defendant was prejudiced by his counsel's ineffectiveness.") (citing United States v. Simmons, 923 F.2d 934, 956 (2d Cir. 1991)).

    **2.  Martinez's remaining claims are barred.**

Martinez's remaining two claims are barred by the mandate rule.  First, Martinez maintains that his Fifth Amendment right to due process and his Sixth Amendment right to trial-by-jury were violated when this Court considered acquitted conduct at sentencing. (Memorandum of Law, Docket No. 697-1, pp. 41-49.)  Second, Martinez contends that his Fifth Amendment right to due process and his Sixth Amendment right to a fair trial were violated when the government engaged in a pervasive pattern of improper conduct at trial.  (Id. pp. 50-59.)  But both of these claims were presented and rejected on direct appeal, and Martinez offers no qualifying basis for reconsideration.  See Martinez, 769 F. Appx. at *16-17; Chin, 622 F.2d at 1092 ("Reconsideration [of claims previously raised on direct appeal] is permitted only where there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal." (citation omitted)).  They are therefore barred

by the mandate rule, which bars re-litigation of issues already decided on direct appeal. See United States v. Sanin, 252 F.3d 79, 83 (2d Cir. 2001) ("It is well established that a § 2255 petition cannot be used to relitigate questions which were raised and considered on direct appeal." (internal quotation and citation omitted)); Perez, 129 F.3d at 260 ("[I]t is well-established that issues decided on direct appeal may not be re-litigated in the context of a petition under § 2255.").

**C.       No evidentiary hearing is required.**

Martinez requests a hearing on his petition.  (See Memorandum of Law, Docket No. 697-1, p. 60.)   As indicated above, § 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  Rule 4 (b) also provides that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ."

Here, no evidentiary hearing is required because the motion and the record conclusively demonstrate that Martinez is entitled to no relief under § 2255. Consequently, this Court finds that no hearing is warranted or required.  See Orbach v. United States, 11 Cr. 111 (NRB), 2017 WL 5632815, at *7 (S.D.N.Y. Nov. 7, 2017) (denying request for a § 2255 hearing where "[t]he existing record is conclusive that petitioner is not entitled to relief on any theory presented to [the court]").

**D.      A certificate of appealability will not issue.**

For a certificate of appealability to issue, a petitioner must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253 (c)(2).  To make the required "substantial showing," Martinez must establish that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002) (per curiam) (citations and internal quotation marks omitted).  Martinez has made no such substantial showing of the denial of a constitutional right in this case.  A certificate of appealability will therefore not issue.

### IV. CONCLUSION

Having considered Martinez's grounds for relief individually and cumulatively, and having presided over the trial of this matter, with opportunity to observe trial counsel first-hand, this Court finds that Martinez has failed to carry his burden of showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to him] by the Sixth Amendment" or to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Harrington, 562 U.S. at 104 (quotations and citations omitted).  He has also failed to show that his remaining two claims are not barred by the mandate rule.   Consequently, Martinez's § 2255 motion must be denied.

If Martinez wishes to appeal, he must file a Notice of Appeal with the Clerk's Office, United States District Court, Western District of New York, within 60 days of the date of judgment in this action.  See Fed. R. App. P. 4 (a)(1)(B)(i).  Requests to proceed on appeal as a poor person, if any, must be filed with the United States Court of Appeals for

the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

## V. ORDERS

IT HEREBY IS ORDERED, that Petitioner's Motion to Vacate, Set Aside or Correct his Sentence under 28 U.S.C. § 2255 (Docket No. 697) is DENIED.

FURTHER, that this Court hereby certifies, pursuant to 28 U.S.C. § 1915 (a)(3) and Rule 24 (a)(3) of the Federal Rules of Appellate Procedure, that any appeal from this Decision and Order would not be taken in good faith and therefore leave to appeal as a poor person is DENIED.  See Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

FURTHER, that a Certificate of Appealability under 28 U.S.C. § 2253 is DENIED.

FURTHER, that the Clerk of Court is directed to CLOSE 21-CV-271S.

FURTHER, that the Clerk of Court is DIRECTED to send a copy of this decision to Petitioner at his correctional institution of record.

SO ORDERED.


Dated:          May 16, 2023
                Buffalo, New York

                                             s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                       United States District Judge

22